**NORTHEASTERN EDUCATIONAL TELEVISION OF OHIO, INC., Plaintiff,**

v.

**EDUCATIONAL TELEVISION ASSOC. OF METROPOLITAN CLEVELAND, et al., Defendants.**

No. C87–1666.

United States District Court, N.D. Ohio, E.D.

Nov. 26, 1990.

David A. Lieberth, David A. Lieberth & Assoc., Akron, Ohio, for Northeastern Educational Television.

Stephen J. Squeri, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for Educational Television Assoc. and Betty Cope.

Robert A. Burka, Knopf & Burka, Washington, D.C., for Eastern Educational Network Inc.

Anthony J. Damelio Jr., Arter & Hadden, Cleveland, Ohio, for Interregional Program Service.

Jan Schneider, Washington, D.C., Clair E. Dickinson, Brouse & McDowell, Akron, Ohio, for CBC Enterprises.

## MEMORANDUM AND ORDER

WILLIAM K. THOMAS, Senior District Judge.

### I.

This action involves alleged violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. Sections 1 and 2), and Sections 1, 4, 5, 12 and 16 of the Clayton Act (15 U.S.C. Sections 12, 15, 16, 22 and 26). In its complaint plaintiff sues for "appropriate injunctive relief and to recover treble damages which Plaintiff has sustained because of the violations of above cited statutes." Complaint under the Sherman Antitrust Act at paragraph 1. On May 24, 1990 plaintiff's counsel by letter informed the court and all defendants that plaintiff "will elect not to present evidence as to specific monetary damages." Thus, it is proceeding only with its prayer for injunctive relief under 15 U.S.C. § 26. Although the plaintiff through a corporate officer has not signed such a waiver, the letter of plaintiff's counsel is deemed binding on the plaintiff.

The plaintiff is Northeastern Educational Television of Ohio, Inc. (hereinafter "NETO") which operates as WNEO–TV (Channel 45) out of Alliance, Ohio and WEAO–TV (Channel 49) out of Akron, Ohio. There are five different defendants. First, Educational Television Association of Metropolitan Cleveland (hereinafter "ETAMC") operates as WVIZ–TV (Channel 25) out of Cleveland, Ohio. Betty Cope,

President and General Manager of WVIZ–TV, is a separate defendant. A third defendant is Eastern Educational Network, Inc. (hereinafter "EEN"), a Massachusetts corporation which prepares, produces, disseminates and cooperates with others in the broadcasting of educational television. Another defendant is the Interregional Program Service (hereinafter "IPS"), which is a management committee formed by one representative from each regional network with member stations electing the remaining ten members. The IPS was originally founded by EEN, and among other things, the service has policies and rules regarding exclusivity which are at the heart of this lawsuit. The last defendant is CBC Enterprises, an unincorporated program syndication service of the Canadian Broadcasting Company, with its principal office in New York City.

The allegations in plaintiff NETO's complaint include the following:

10. All of the Defendants have violated the provisions of [the Sherman Act, as amended] ... in that they are engaged in a combination and conspiracy to place unlawful restraints upon trade and commerce in Ohio.

11. Defendants have combined to destroy competition and to secure a monopoly by the institution of a policy known as Duplicate Market Criteria. This policy classifies WVIZ–TV as the "primary licensee" and WNEO–TV/WEAO–TV as the "secondary licensee", which allows the primary licensee the right to exclusive programming if it so chooses. Exclusivity of programming began on or about January 1, 1985 and continues as a policy promulgated by the Defendants Interregional Program Service and Eastern Educational Network, Inc.

. . . .

13. Such exclusive practices engaged in by the Defendants injure competition and public television viewers throughout the coverage area of WNEO–TV and WEAO–TV. Since January 1, 1985, the Defendants have elected to deny WNEO–TV and WEAO–TV the right to purchase

at least 130 programs offered by Interregional Program Service that otherwise could have been purchased by Plaintiff except for the unlawful actions of the Defendants, including the program, "Nature of Things." These practices denying substantial portions of the population of Northeast Ohio access to said programs constitute an unlawful restriction of competition as Plaintiff can no longer acquire these quality programs, even on a competitive basis with WVIZ–TV.

Complaint Under the Sherman Antitrust Act at 4–6. Turning then to the relevant statutory law, Section 1 of the Sherman Act provides in pertinent part:

> Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

15 U.S.C. Section 1. Section 2 of the Sherman Act provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony. . . .

15 U.S.C. Section 2.

CBC filed a Motion to Dismiss on September 9, 1987. In that motion CBC moved to dismiss pursuant to Fed.R.Civ.P. 12 for "lack of personal jurisdiction, improper venue, failure to state a claim upon which relief can be granted and defective service of process." *Id.* The memorandum supporting that motion, as well as the subsequent briefing, focussed primarily on the issue of personal jurisdiction. The briefing did address, to a lesser extent, CBC's assertion that NETO's complaint fails to state a claim upon which relief can be granted. In an Order filed December 18, 1987, Judge Bell ruled as follows:

> Accordingly, defendant's motion to dismiss on the basis of improper venue and lack of personal jurisdiction is denied. Defendant's motion in relation to service is granted in that defective service on CBC is quashed and leave of twenty days

is granted to effect proper service. Defendant's motion to dismiss pursuant to Rule 12(b)(6) will be treated as a motion for summary judgment and ruling deferred pursuant to the schedule provided in this order.

December 18, 1987 Order at 14–15.

On May 9, 1990, this case was transferred to the docket of Judge William K. Thomas. With the jurisdiction and venue issues having been resolved by Judge Bell, the only remaining motion as to defendant CBC is its motion for summary judgment.

## II.

In support of the original Motion to Dismiss, CBC makes the following argument:

> The sole complaint that NETO raises against CBC is that defendant EEN licensed at least one CBC series, Nature of Things, on an exclusive basis in the Alliance–Akron area. Again, even if EEN's actions were to be imputed to CBC, exclusivity alone is not prohibited by the antitrust laws, and it is clear that exclusive licensing is an acceptable practice in the television industry.

Memorandum in Support of CBC Motion to Dismiss at 19–20. Attached to the memorandum is an affidavit of Jean–Louis Arcand, Director of United States Operations for CBC and formerly responsible for special projects in the office of the president of CBC. This affidavit states in pertinent part:

> 8. CBC has not dealt with plaintiff Northeastern Educational Television of Ohio, Inc. ("NETO"). . . . All dealings with plaintiff NETO and its stations herein relevant concerning CBC programs have been by defendant Eastern Educational Network, Inc. ("EEN").
>
> . . . .
>
> 10. Any and all CBC programs broadcast in Ohio are licensed by EEN (or by the Central Educational Network, "CEN"). Pursuant to CBC's contractual arrangements with EEN, it is solely up to EEN to decide whether a given program or series will be licensed on an exclusive basis in any area. CBC has nothing to do with this decision. CBC

has nothing to do with choice of stations licensed to broadcast CBC programs in the Cleveland metropolitan or Akron–Alliance area, nor any responsibility therefor.

Affidavit of Jean–Louis Arcand, September 3, 1987, at 3–4.

Plaintiff's Response to Defendant, CBC's Motion to Dismiss, in turn, states the following:

The exclusivity policy was adopted by Defendant EEN and IPS.... The policy is first triggered by the program supplier itself. In this case by CBC. As set forth in the Affidavit of Gerald Schumacher, a program supplier may deny exclusivity and at least three suppliers of programs through IPS have elected to modify their contracts with IPS so as not to participate in this unlawful policy; namely, Lionheart Television International, Inc., Devillier Donegan Enterprises, and Robert Keeshan Associates, the producers of "Captain Kangaroo."

*Id.* at 2. CBC counters that "no one at NETO has ever asked anyone at CBC or CBC Enterprises to try to induce defendants Eastern Educational Network or its Interregional Program Service to waive exclusivity." Supplemental Memorandum in Support of CBC Motion to Dismiss at 3. CBC attaches to its Supplemental Memorandum deposition excerpts from the deposition testimony of Jerry Schumacher, plaintiff NETO's director of programming, and Torey Southwick, NETO's president. Both Schumacher and Southwick admit that their only claim against CBC is that it failed to opt out of IPS's exclusivity policy, and they both further admit that neither they nor anyone at NETO ever approached CBC about waiving exclusivity. *See* Deposition of Jerry Schumacher at 8, 10–11 and 21; Deposition of Torey Southwick at 7–11. While not attempting to supplement any of the referenced testimony of either Mr. Schumacher or Mr. Southwick, in its supplemental brief of January 19, 1988, NETO argues:

CBC is a supplier of programming to EEN/IPS. However, by not denying exclusivity, CBC has precluded

WNEO/WEAO from purchasing a number of popular programs. (See paragraph 10 of Exhibit H) CBC has failed to deny exclusivity even though other suppliers and distributors have done so. (See paragraph 8 and 9 of Exhibit H) For example Devillier, Donegan Enterprises refused to allow exclusivity to be applied to WNEO/WEAO (Exhibit H) CBC's license agreements with EEN/IPS contain attachments showing the excluded markets. (See Exhibit I) WNEO is specifically labelled as excluded market and an asterisk (*) labels it as an overlap market in the attachment to the CBC/EEN contract.

As a result, CBC failed to deny exclusivity even though its contracts with EEN denote WNEO/WEAO as an excluded market. By its omission, CBC has acted in restraint of trade and competition and has effectively precluded viewers in Akron, Youngstown and Northeastern Ohio from viewing quality programs.

NETO Supplemental Brief of January 19, 1988 at 4, 5. In its February 1, 1988 Response to NETO's Supplemental Brief, CBC argues:

NETO has not offered one shred of evidence—by way of affidavit, deposition or documentary proof—that CBC either (i) knew about the policy, or (ii) acted in combination or conspiracy with EEN, any other supplier or any other party whatsoever in failing to exercise its alleged right to opt out. Nor is there any evidence that CBC refused to deal with NETO out of any malevolent purpose or intent....

CBC Response to NETO Supplemental Brief at 7.

### III.

Pronouncing the standard for summary judgment under Fed.R.Civ.P. 56(c), the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986):

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to inter-

rogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Id.* at 247, 106 S.Ct. at 2509–10; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Regarding the burden of proof, the Court goes on to say, "[W]e are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252, 106 S.Ct. at 2512. The Court has made clear that a trial is required only where there is a *genuine* issue as to a material fact, not just "the mere existence of *some* alleged factual dispute...." *Id.* at 247, 106 S.Ct. at 2510 (emphasis in the original).

Referring to *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), and *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Court in *Anderson* states,

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Cities Service, supra,* [391 U.S.] at 288–289 [88 S.Ct. at 1592.] If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82 [87 S.Ct. 1425, 18 L.Ed.2d 577] (1967) (*per curiam* ), or is not significantly probative, *Cities Service, supra,* [391 U.S.] at 290 [88 S.Ct. at 1593], summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2511. As to evidence presented by the party opposing summary judgment, the Court states, "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513 (citation omitted).

■ In its Supplemental Brief, plaintiff NETO makes the following statement regarding the standard for summary judgment:

> Historically, courts have been reluctant to grant summary judgment in complex antitrust cases. *Poller v. Columbia Broadcasting Co.,* 368 U.S. 464, 473 [82 S.Ct. 486, 491, 7 L.Ed.2d 458] (1962). If the factual basis of the allegations renders the plaintiff's claim implausible however, summary judgment may be granted. *Matsushita Electric Ind. Co. v. Zenith Radio,* [475 U.S. 574] 106 S.Ct. 1348 [89 L.Ed.2d 538] (1986). For example, if plaintiff demonstrates that the inference of conspiracy is reasonable in light of the competing inferences of independent action, the granting of a summary judgment is improper. *Id.* [106 S.Ct.] at 1356–57.

Plaintiff's Supplemental Brief at 1–2. In the past, numerous courts, including the Sixth Circuit, recognized this reluctance to grant summary judgment in complex antitrust cases, which stemmed from the language in *Poller. E.g., see Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319, 1324 (6th Cir.1983). Even in *Bouldis,* the Sixth Circuit recognized that "this general rule does not preclude the use of summary judgment in appropriate antitrust litigation." *Id.* at 1324. Continuing, the *Bouldis* court added, "If the record evidence is not disputed as to any material fact, the case should be decided as a matter of law rather than submitted to a jury." *Id.*

Regardless of the "reluctance" to grant summary judgment in antitrust cases which existed previously, since the United States Supreme Court's decisions in *Liberty Lobby, Celotex,* and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), there is clearly no presumed reluctance to grant summary judgment in antitrust cases, complex or otherwise, under the current law. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478–80 (6th Cir.1989); *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659–60 n. 4 (7th Cir.1987), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). In *Street v. J.C. Bradford & Co.,* the Sixth Circuit

spoke of a " 'new era' summary judgment practice." The court in *Street* acknowledges that this "new era" has been ushered in by the Supreme Court's decisions in *Liberty Lobby, Celotex,* and *Matsushita.* The court specifically recognizes that, "In *Matsushita,* the Court held that summary judgment was proper even in a complex antitrust case." *Street,* 886 F.2d at 1478 (citing *Matsushita* ). The Sixth Circuit then announces ten "principles for 'new era' summary judgment practice." Among these principles are the following:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

. . . .

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

*Street v. J.C. Bradford & Co.,* 886 F.2d at 1479–80 (footnotes omitted).

While affirming the Seventh Circuit in *Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984), the Court ruled the Court of Appeals had applied an incorrect standard in a vertical price fixing case. The *Monsanto* Court states:

The correct standard is that there must be evidence that tends to exclude the possibility of independent action by the manufacturer and distributor. That is, there must be direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective. Under this standard, the evidence in this case created a jury issue as to whether Spray–Rite was terminated pursuant to a price-fixing conspiracy between Monsanto and its distributors. The judgment of the court below is affirmed.

*Id.* at 768, 104 S.Ct. at 1473 (footnote omitted). The Court in *Matsushita* elaborates further on what an antitrust plaintiff must show in order to "survive a motion for summary judgment":

But antitrust law limits the range of permissible inferences from ambiguous evidence in a Section 1 case. Thus, in *Monsanto Co. v. Spray–Rite Service Corp.,* 465 U.S. 752 [104 S.Ct. 1464, 79 L.Ed.2d 775] (1984), we held that conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy. *Id.,* at 764 [104 S.Ct. at 1470.] See also *Cities Service, supra,* [391 U.S.] at 280 [88 S.Ct. at 1588.] To survive a motion for summary judgment or for a directed verdict, a plaintiff seeking damages for a violation of Section 1 must present evidence "that tends to exclude the possibility" that the alleged conspirators acted independently. 465 U.S., at 764 [104 S.Ct. at 1470]. Respondents in this case, in other words, must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed respondents. See *Cities Service, supra,* [391 U.S.] at 280 [88 S.Ct. at 1588].

*Matsushita,* 475 U.S. at 588, 106 S.Ct. at 1356. In accordance with the holdings of *Monsanto* and *Matsushita,* the United States Court of Appeals for the Sixth Circuit approved the district court's adoption of a two part test for evaluating summary judgment motions in an antitrust conspiracy case:

*Monsanto* and *Matsushita* together establish

a two-part inquiry for evaluating the propriety of summary judgment in an antitrust conspiracy case: (1) is the plaintiff's evidence of conspiracy ambiguous, *i.e.*, is it as consistent with the defendants' permissible independent interests as with an illegal conspiracy; and, if so, (2) is there any evidence that tends to exclude the possibility that the defendants were pursuing these independent interests.

*Riverview Investments, Inc. v. Ottawa Community Improvement Corp.*, 899 F.2d 474, 483 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990) (citing *Gibson v. Greater Park City Co.*, 818 F.2d 722, 724 (10th Cir.1987)).

### IV.

■ It should be noted that exclusivity in the television industry is not strictly prohibited. Indeed, 47 C.F.R. Section 73.-658(m) states in pertinent part:

> *Territorial exclusivity in non-network arrangements.* (1) No television station shall enter into any contract, arrangement, or understanding, expressed or implied; with a non-network program producer, distributor, or supplier, or other person; which prevents or hinders another television station located in a community over 56.3 kilometers (35 miles) away, as determined by the reference points contained in Section 76.53 of this chapter, (if reference points for a community are not listed in Section 76.53, the location of the main post office will be used) from broadcasting any program purchased by the former station from such non-network program producer, distributor, supplier, or other person, *except that a television station may secure exclusivity against a television station licensed to another designated community in a hyphenated market specified in the market listing as contained in Section 76.51 of this chapter for those 100 markets listed. . . .*

*Id.* (emphasis added). The eighth major television market listed under 47 C.F.R. Section 76.51 is "Cleveland–Lorain–Akron, Ohio." If WNEO–TV, WEAO–TV and WVIZ–TV all fall within the "Cleveland–Lorain–Akron" "hyphenated market," then Section 73.658(m) would seem to provide for the option of exclusivity. None of the parties have addressed whether or not they are members of this hyphenated market, accordingly this issue will not be decided in the context of CBC's motion for summary judgment. Moreover, even if 47 C.F.R. Section 73.658(m) has been violated, whether or not such a violation would be illegal under the antitrust laws would remain to be decided. In any event, it is clear that the "marketing of exclusive rights to television programs is not in itself violative of the antitrust laws." *Ass'n of Independent T.V. Stations, Inc. v. College Football Ass'n,* 637 F.Supp. 1289, 1304 (W.D.Okla. 1986).

■ Vertical, non-price restraints, such as the exclusivity policy at issue in this case, are examined under the rule of reason standard. *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). Explaining this rule, the Court in *GTE Sylvania* states:

> Under this rule, the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.

*Id.* at 49, 97 S.Ct. at 2557 (footnote omitted). The omitted footnote to the Court's foregoing language is a statement from Justice Brandeis in *Board of Trade of the City of Chicago v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 244, 62 L.Ed. 683 (1918):

> "The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition. To determine that question the court must ordinarily consider the facts peculiar to the business to which the restraint is applied; its condition before and after the restraint was imposed; the nature of the restraint and its effect, actual or probable. The history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the pur-

pose or end sought to be attained, are all relevant facts...."

*Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. at 49 n. 15, 97 S.Ct. at 2557 n. 15. In considering "the facts peculiar to the business to which the restraint is applied," *id.*, this court must look at exclusivity within the context of the television broadcasting industry. In *Ralph C. Wilson Industries, Inc. v. Chronicle Broadcasting Co.*, 794 F.2d 1359 (9th Cir.1986), the Ninth Circuit dealt with a case factually very similar to the case currently before this court. In *Ralph C. Wilson Industries, Inc.*, the court noted that, "Exclusivity is prevalent within the television broadcasting industry." *Id.* at 1361.

*Ralph C. Wilson Industries, Inc.* involved the plaintiff Wilson, the licensee of an independent television station licensed to San Jose, California, alleging antitrust violations on the part of several network and independent television stations and the suppliers of non-network television programs. In that case, the court noted that Wilson was not contending that exclusivity in television program licensing is illegal *per se* under the Sherman Act, and, in fact, Wilson's station itself engaged in exclusivity. Wilson did, nevertheless, contend that the plaintiffs' exclusive program licensing practices unreasonably restrained trade and that the defendant television stations were engaging in a "horizontal conspiracy to deny appellant access to quality television programming." *Id.* at 1362 (footnote omitted). In examining the plaintiff's claim of unreasonable restraint of trade, the Ninth Circuit applied the rule of reason standard, stating that plaintiff-appellant Wilson "must show that station appellees' practices injured or decreased competition." *Id.* at 1363. Referring to the often cited language from *Brown Shoe Co. v.*

*United States*, 370 U.S. 294, 82 S.Ct. 1502, 8 L.Ed.2d 510 (1962), the court in *Wilson* states, "The antitrust laws were enacted for 'the protection of *competition,* not *competitors.*'" *Ralph C. Wilson Industries, Inc.*, 794 F.2d at 1363 (citing *Brown Shoe Co., supra.*) (emphasis in original). Continuing, the Ninth Circuit states, "We have held that 'it is injury to the market, not to individual firms, that is significant.'" *Ralph C. Wilson Industries, Inc.*, 794 F.2d at 1363 (citations omitted). After defining the relevant market, the *Wilson* court ultimately found that the plaintiff had not shown "any genuine issue of material fact with regard to actual injury to competition...." *Id.* at 1364. Likewise, the court did not find genuine issues of material fact "concerning a conscious commitment to a common scheme to deny programming to [plaintiff]." *Id.* at 1366. Accordingly, the Ninth Circuit in *Wilson* affirmed the district court's granting of summary judgment.

■ Having reviewed the summary judgment standards and anti-trust "principles" which control this court's decision, the facts of this case can now be analyzed in terms of these standards. The only cause of action alleged against defendant CBC is the Plaintiff's First Cause of Action, as set forth in the complaint. Therein, plaintiff NETO alleges that the defendants, including CBC, "have combined to destroy competition and to secure a monopoly by the institution of a policy known as Duplicate Market Criteria." Complaint Under Sherman Antitrust Act at paragraph 11.

CBC argues that, "The dollar amount of business transacted by CBC itself in this judicial district is zero."[1] Memorandum in Support of CBC Motion to Dismiss at 7. In addition, CBC points out that any of its

---

1. The Affidavits of both Jean–Louis Arcand, Director of United States Operations for CBC, and Frank S. Schatz, the only professional employee in CBC Enterprises' New York office, state that for the fiscal year April 1, 1985 to March 31, 1986, "CBC had income of $1,031.1 million Canadian [dollars]." Affidavit of Jean Louis–Arcand, September 3, 1987, at paragraph 6; Affidavit of Frank S. Schatz, September 2, 1987, at paragraph 17. The affidavits of Messieurs Arcand and Schatz further state that with over $1 billion Canadian income, during that same fiscal year CBC had $2,818,222 Canadian income from sources in the United States. *Id.* at paragraphs 7 and 18, respectively. As CBC points out, its income from United States sources is less than three tenths of one percent of its total income. Memorandum in Support of CBC Motion to Dismiss at 9.

**1568**

programs which are carried in Ohio are carried "through licensing agreements with EEN, an independent contractor." *Id.* As a result of this licensing arrangement, CBC received $100 in 1985 and $8000 in 1986 for licensing in Ohio. *Id.* at 9; Affidavit of Frank S. Schatz, September 2, 1987. Plaintiff NETO has presented no evidence to refute these figures of CBC. Additionally, neither party has presented evidence which specifically defines the market relevant to this lawsuit. This court must nevertheless presume that $8000 is an insignificant share of the market in which WNEO–TV and WEAO–TV compete. Based on these figures, this court concludes as a matter of law that CBC does not have a significant share of the market in which NETO competes to have market dominance or monopoly power. *See A.I. Root Co. v. Computer/Dynamics, Inc.*, 806 F.2d 673 (6th Cir. 1986).

The question that remains is whether or not CBC is part of a conspiracy to restrain trade. With all discovery having been completed, including depositions of NETO's president and director of programming, plaintiff NETO itself admits that its only factual claim against CBC is based on CBC's failure to opt out of IPS's exclusivity policy. *See supra* pp. 1562–63. But this claim assumes CBC made a conscious affirmative decision to opt out of the exclusivity policy. However, there is no evidence that CBC was even aware that it could waive exclusivity with regard to program rights sold to IPS. NETO admits that it never contacted CBC or asked CBC to waive exclusivity respecting programs sold to IPS. *See supra* p. 1563. In short, NETO has presented no evidence to support its conclusory allegation that CBC is a part of any conspiracy. In light of the burden *Monsanto, Matsushita* and *Riverview Investments, Inc. v. Ottawa Community Improvement Corp.* place on the antitrust plaintiff attempting to survive a motion for summary judgment, NETO must come up with some evidence " 'that tends to exclude the possibility' " that CBC was acting independently in entering into a contractual arrangement with IPS to sell its programs. *Matsushita*, 475 U.S. at 588,

106 S.Ct. at 1356. In addition, plaintiff must "present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others 'had a conscious commitment to a common scheme designed to achieve an unlawful objective.' " *Monsanto*, 465 U.S. at 764, 104 S.Ct. at 1471. NETO, however, has come forward with no such evidence. Under the circumstances, plaintiff NETO having presented no evidence to support its allegations of conspiracy, defendant CBC's motion for summary judgment must be, and is, GRANTED. Accordingly, all of plaintiff NETO's claims against CBC are hereby DISMISSED with prejudice.

IT IS SO ORDERED.