**CABLE HOLDINGS OF GEORGIA, INC., d/b/a Smyrna Cable TV, Plaintiff-Appellant,**

v.

**HOME VIDEO, INC., Wometco Cable TV of Georgia, Inc., and S.M. Landress, Defendants-Appellees.**

**Nos. 86–8345, 86–8445.**

United States Court of Appeals, Eleventh Circuit.

Aug. 31, 1987.

Rickman P. Brown, Atlanta, Ga., Howard Graff, Bloch, Graff, Danzig, Jelline & Mandel, New York City, for plaintiff-appellant.

W. Gordon Hamlin, Jr., Powell, Goldstein, Frazer & Murphy, Atlanta, Ga., for Wometco.

John A. Pickens, Law Offices of John A. Pickens, Atlanta, Ga., for H. Video and Landress.

Before HATCHETT and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

ANDERSON, Circuit Judge:

In this antitrust case, Cable Holdings of Georgia, Inc. ("Cable Holdings") appeals from a jury verdict in favor of defendants Home Video, Inc., Wometco Cable TV of Georgia, Inc. ("Wometco"), and S.M. Landress. We affirm.

## I. BACKGROUND

The three corporate parties, Cable Holdings, Home Video, and Wometco are engaged in the cable television business in Cobb County, Georgia. Defendant Landress is an individual attorney who owned fifty percent of the stock in Home Video at the time it was sold to Wometco.

The cable business involves the distribution of over-the-air television broadcast signals, distant signals, pay services (such as HBO, Cinemax and Disney), and locally-originated television through a network of cables. This cable network connects the "head end" of the system (an antenna or earth station which receives signals communicated via satellite) to a system of coaxial cable with further connection to each individual subscriber. The coaxial cable is generally strung along utility poles.

The antitrust allegations in this suit arise out of Cable Holdings' attempt to expand its cable business into an area known as the "western territory." Wometco had purchased Home Video whose franchise encompassed the western territory. Thereafter, Cable Holdings sought and received a franchise which permitted it to expand its operation into the western territory as well. Cable Holdings alleged in its complaint that Wometco and Home Video, with the help of Landress, took various actions to prevent Cable Holdings from competing for subscribers in the western territory. These allegedly anticompetitive actions included: (1) opposing Cable Holdings' application for a franchise in the western territory; (2) seeking a revocation of the plaintiff's franchise for the western territory; and (3) erecting strand in the western territory. Strand is wire hung on utility poles and is used to support the coaxial cable which carries a cable television signal. By stringing this strand in the western territory, Wometco and Home Video allegedly inhibited Cable Holdings from stringing its own strand.

However, at the root of Cable Holdings' complaint lies the allegation that Home Video and Wometco instituted in state

court a sham lawsuit for the purpose of deterring Cable Holdings' expansion into the western territory. The gravaman of the state lawsuit was the defendants' allegation that Cable Holdings had contractually agreed with Home Video and Wometco not to expand into the western territory. Home Video and Wometco sought in the state lawsuit to enforce this agreement and prevent Cable Holdings from expanding its cable service into the western territory. In its federal antitrust suit, Cable Holdings alleged that the lawsuit was instituted by Home Video and Wometco solely for the purpose of deterring Cable Holdings' competition in the western territory and that the defendants knew that there was no legal basis for enforcing the alleged agreement. Further, Cable Holdings alleged that fear of this lawsuit had an anticompetitive effect upon its actions since it refrained from continuing its expansion into the western territory while the lawsuit was pending. Essentially, Cable Holdings claimed that Home Video and Wometco sought to avoid competition in the western territory by instituting a baseless retaliatory lawsuit in state court and that these actions violated §§ 1 and 2 of the Sherman Antitrust Act (15 U.S.C. § 1, 2). Moreover, Cable Holdings alleged that the merger between Home Video and Wometco violated § 7 of the Clayton Act (15 U.S.C. § 18).

After an extensive jury trial, the jury entered a verdict in favor of all defendants, finding that no violation of the Sherman Act had occurred. Thereafter the district court entered judgment in defendants' favor on the Sherman Act claims and also on Cable Holdings' Clayton Act claim. From these judgments, Cable Holdings now appeals.

## II. DISCUSSION

■ In challenging the jury verdict, Cable Holdings focuses upon various alleged errors in the jury charge. Specifically, Cable Holdings contends: (1) that the jury was incorrectly charged regarding restraint; (2) that the jury was incorrectly charged regarding the *Noerr-Pennington* doctrine;[1] (3) that the jury was incorrectly charged regarding concerted actions; (4) that the jury was incorrectly charged regarding conspiracy; (5) that the jury was incorrectly charged regarding preparedness; and (6) that the jury was incorrectly permitted to determine the appropriate product market. In addition, Cable Holdings contends that the court improperly admitted evidence of its unclean hands.

We conclude that the jury was properly instructed on the issue of preparedness and that there was ample evidence to support the jury's special verdict which found that Cable Holdings was not prepared to enter the western territory. *See* Record on Appeal, vol. 14, Tab 255. Consequently, we affirm the judgment that all defendants were innocent of any violation of §§ 1 and 2 of the Sherman Antitrust Act.

Preparedness is plainly relevant to a determination of whether Cable Holdings was injured by the lawsuit. If Cable Holdings' was not prepared to expand its business, the state lawsuit could not have been the cause of any injury to the company. For even in the absence of the allegedly anticompetitive lawsuit, Cable Holdings would not be in a technical and financial position to compete with the defendants. Thus, if Cable Holdings is deemed unprepared it has failed to establish one of the prerequisites of a private cause of action under the antitrust law—"a causal relationship between the antitrust violation [alleged] and the injury [sustained]." *National Independent Theater Exhibitors, Inc. v. Buena Vista Distribution Co.,* 748 F.2d 602, 607 (11th Cir.1984), *cert. denied,* 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985).

■ This causal relationship is a mandatory part of a plaintiff's case. To recover

---

**1.** This doctrine may sometimes provide immunity for allegedly anticompetitive activity which is designed to influence public officials. *Eastern Railroad Presidents Conference v. Noerr Mo-* *tor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

under the antitrust laws, a plaintiff must prove that a defendant's illegal conduct materially contributed to his injury. *Id.* Proof of a violation of the Sherman Act standing alone does not establish civil liability. *McClure v. Undersea Industries, Inc.,* 671 F.2d 1287, 1289 (11th Cir.1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 788 (1983); *Alabama v. Blue Bird Body, Inc.,* 573 F.2d 309, 317 (5th Cir.1978).[2] An antitrust plaintiff must show that he has been damaged and that the antitrust violation alleged is the cause of his injury. *See Construction Aggregate Transport, Inc. v. Florida Rock Industries,* 710 F.2d 752, 782–83 (11th Cir.1983); *cf. Zenith Radio Corp. v. Hazeltine Research,* 395 U.S. 100, 114–15 & n. 9, 89 S.Ct. 1562, 1571–72 & n. 9, 23 L.Ed.2d 129 (1969). Thus, Cable Holdings was required to demonstrate that the defendants' lawsuit frustrated its attempt to expand its business into the western territory.

■ When one seeks to recover for an antitrust injury that allegedly arises from the frustrated expansion of one's business into a new market, there are two significant requirements for establishing an entitlement to recovery; a demonstration of "(1) an intention to enter the business, and (2) a showing of preparedness to enter the business." *Hayes v. Solomon,* 597 F.2d 958, 973 (5th Cir.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); *see also Heatransfer Corp. v. Volkswagenwerk, A.G.,* 553 F.2d 964, 988 n. 20 (5th Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); *Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 723 (11th Cir.1984).[3] Without these two showings it cannot fairly be concluded that the antitrust violation was the cause of the failure to expand.

In the instant case, there was ample evidence to support the jury's conclusion that Cable Holdings was unprepared to enter the western territory market. Testimony at trial indicated that Cable Holdings had not prepared cash flow estimates and financial statements in order to determine the profitability of the expansion. Nor had it obtained several of the permits necessary for the expansion or prepared any of the detailed design maps for the expansion. In addition, Cable Holdings had never applied for or obtained FCC approval for frequency allocations to serve the western territory. The territorial limit of Cable Holdings' existing FCC authorization covered only a small portion of the new territory. Finally, Wometco presented testimony indicating that Cable Holdings' existing system would not have been able to serve the western territory without a significant expansion requiring, possibly, the construction of a

---

**2.** This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

**3.** Cable Holdings argues that these cases establish two distinct legal standards for evaluating the issue of preparedness. It contends that when the issue is one of prevention of entry into a new business, the antitrust plaintiff must in the first instance demonstrate preparation to enter. On the other hand, it contends, if the case involves the natural expansion of an existing business, the plaintiff need not demonstrate actual evidence of preparedness. The cases do not support this distinction. As noted in *Heatransfer,* "even though an antitrust plaintiff operates a going concern, he must demonstrate his preparedness and intent to expand that business into a new market if he claims that the expansion of that business into a new market has been foreclosed to him by the monopolistic activities of the defendant." 553 F.2d at 988 n. 20.

Contrary to Cable Holdings' argument, the distinction actually drawn in *Heatransfer* is between expansion of an ongoing business into a new market—which does require a showing of preparedness—and the mere "growth in an ongoing business." In *Heatransfer,* a plaintiff who had demonstrated itself to be a going concern with capacity to manufacture and market air conditioning units for the entire family of Volkswagen automobiles was entitled—without a further showing of preparedness—to prove damages with respect to such units for Volkswagen models that it had already produced and also was entitled to prove damages with respect to "other model" units which it had not yet actually manufactured, but which were within its existing capacity to manufacture. In the instant case, Cable Holdings' attempt to enter the new geographic market, i.e., the western territory, was clearly an expansion of an ongoing business into a new market which does require a showing of preparedness.

new head end. In short, evidence existed which demonstrated that, in the capital intensive cable industry, Cable Holdings was simply unprepared to expand its services into the western territory.

■ Since the jury was properly instructed that preparation is a necessary prerequisite to recovery, and since there was ample evidence to support the jury's conclusion that Cable Holdings lacked preparedness, we must affirm the jury verdict finding no violation of §§ 1 and 2 of the antitrust laws. Absent preparation to expand into the western territory, Cable Holdings cannot demonstrate that the anticompetitive activity complained of (defendant's lawsuit) is the actual cause of the injury to their business.[4] This conclusion makes it unnecessary for us to address Cable Holdings' other claims of error,[5] except the merger issue discussed below.

■ However, the preparedness issue is not sufficient grounds for affirmance of the district court's determination that § 7 of the Clayton Act has not been violated. The merger between Home Video and Wometco may have affected not only Cable Holdings' attempt to enter the western territory, but its competitive activities within the franchise area it already serves. Hence, the jury's conclusion that Cable Holdings was unprepared to enter the western territory does not foreclose the possibility that the merger caused injury to Cable Holdings in its own franchise area.

■ Nonetheless, the district court properly entered judgment in favor of the de-fendants on Cable Holdings' § 7 claim. The jury determined that cable television is not the relevant product market. Apparently, it accepted defendants' contention that the appropriate product market was passive visual entertainment which includes cable television, satellite television, video cassette recordings, and free over-the-air television. This determination by the factfinder of the relevant market must be accepted unless clearly erroneous. *See National Bancard Corp. v. Visa U.S.A.,* 779 F.2d 592, 604 (11th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). We cannot conclude that the jury's product market determination was erroneous.[6] Indeed, other circuits have determined that these products all constitute a single relevant product market and that they are reasonably interchangeable by consumers. *See Satellite Television & Associated Resources, Inc. v. Continental Cablevision of Virginia, Inc.,* 714 F.2d 351, 355 (4th Cir.1983), *cert. denied,* 465 U.S. 1027, 104 S.Ct. 1285, 79 L.Ed.2d 688 (1984).

Since the two merged companies do not control a significant portion of the relevant product market, no anticompetitive effects arise from the merger. Consequently, the district court properly dismissed Cable Holdings' Clayton Act claim on the grounds that it had failed to prove that the merger would monopolize a significant portion of the relevant product market.

For the foregoing reasons, the judgment of the district court in favor of defendants

---

4. Cable Holdings contends that the Cobb County Board of Commissioners' decision to grant them a franchise in the western territory conclusively proves that they were prepared to expand their business. We disagree. Permission to enter a business may well preceed by many months or even years a business company's ability, financially and technically, to implement the franchise.

5. Nor do we credit Cable Holdings' complaint that numerous other errors in the charge somehow infected the jury's finding on preparation. Our review of the charge convinces us that few, if any, errors were made by the trial court. Certainly, there were no errors which tainted the jury's finding on preparation.

6. Although the jury's product market determination was in the context of the Sherman Act claims, the district court's reliance on that jury finding in the Clayton Act context was not error. *Cf. Brown Shoe Co. v. United States,* 370 U.S. 294, 325, 82 S.Ct. 1502, 1523, 8 L.Ed.2d 510 (1962) (applying Sherman Act product market standard to Clayton Act claims).

Cable Holdings also asserts that other errors tainted the jury's product market finding. We have carefully examined these contentions and find them to be without merit.

Home Video, Wometco and Landress is, in all respects,

AFFIRMED.[7]

---

7. Cable Holdings also argues that the district court improperly permitted the defendants to introduce evidence of Cable Holdings' unclean hands. Our examination of the record convinces us that this evidence was relevant to an assessment of the motivation defendants had in initiating the state lawsuit and that it was introduced solely as rebuttal to plaintiff's allegations. We find no error.