**ERINMEDIA, LLC, and, ReacTV, LLC, Plaintiffs,**

v.

**NIELSEN MEDIA RESEARCH, INC., Defendant.**

No. 8:05–cv–1123–T–24–EAJ.

United States District Court, M.D. Florida, Tampa Division.

Nov. 17, 2005.

Charles P. Campbell, Jr., Tammy Nicole Giroux, Shumaker, Loop & Kendrick, LLP, Tampa, FL, Jeffrey S. Cashdan, Jennifer R. Vala, Richard A. Schneider, King & Spalding LLP, Atlanta, GA, for Plaintiffs.

Joseph J. Simons, Leslie Gordon Fagen, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, NY, Keith E. Rounsaville, Margaret Diane Mathews, Akerman Senterfitt, Tampa, FL, for Defendant.

### ORDER

BUCKLEW, District Judge.

This cause comes before the Court on Defendant's Motion to Dismiss Complaint. (Doc. No. 14). Plaintiffs oppose this motion. (Doc. No. 24).

### I. Background

ErinMedia, LLC and ReacTV, LLC ("Plaintiffs") allege the following in their complaint. (Doc. No. 1). ErinMedia, LLC ("erinMedia") is a media research company engaged in the production and sale of market research and television audience research, analyses, ratings, and reports compiled through the examination of audience behavior. (¶ 21). ReacTV, LLC ("ReacTV") is a television production company which is developing an interactive television gaming network. (¶ 24). Nielsen Media Research, Inc. ("Defendant") is a television data collection and research company engaged in the production and sale of market research and audience research, analyses, ratings, and reports in the United States and Canada. (¶ 17). Plaintiffs allege that Defendant has held and continues to hold a monopoly in the television ratings industry. (¶¶ 1, 2). Plaintiffs further allege that Defendant has maintained its monopoly in the relevant market area through various anticompetitive practices designed to impede or prevent competition and innovation.

Plaintiffs claim that Defendant collects both local and national television audience measurement data and performs analyses on that data. (¶ 18). Defendant then prepares reports, which it sells to the four national broadcast networks, locally owned television stations, cable networks, multisystem operators ("MSOs"), satellite television service providers, and advertising and marketing agencies. (¶ 18). The information gathered by Defendant is used to determine what programing will be made available on television and what it costs to advertise during that programming. (¶ 18).

Plaintiffs claim that Defendant only uses a small subset of the overall television

viewers to compile its data and reports. (¶ 19). Plaintiffs state that Defendant collects its data from approximately 5,000 households. These households allow Defendant to install metering devices, known as Nielsen People Meters, which collect data from the programming being run on the television in these households. (¶ 19). Data from these 5,000 households is supplemented with approximately 2,800 sample households taken in seven of the top ten local markets.

Plaintiffs allege that Defendant's use of such a small sample is based on outmoded research collection methodologies and generates inaccurate reports as to a television audience. (¶ 20). In particular, Plaintiffs claim that Defendant's use of such a small number of sample households inhibits MSOs from developing and selling advertising for non-linear programing, such as on-demand television programing.

ErinMedia asserts that its data collection process allows it to directly access and collect data of potentially millions of television viewers. (¶ 22). ErinMedia has developed advanced database technologies that allow it to analyze second-by-second television viewing statistics. (¶ 21). These statistics are gathered through the use of tuning data collected from advanced set-top boxes and independently gathered demographic data. Unlike Defendant's data, erinMedia's data provides networks and advertisers with a much more detailed analysis of the television audience's viewing characteristics. This detailed analysis allows buyers to pin-point key demographic trends that Defendant's data is unable to detect. (¶ 21). In erinMedia's data collection process, MSOs deploy set-top boxes into the market, another provider harvests and scrubs the data to eliminate privacy issues, and then erinMedia uses the data to sell ratings and behavioral analyses. (¶ 23).

ReacTV plans to develop reactive television programing, including the development of an interactive gaming network that allows television viewers to compete for prizes by watching and reacting to television programing and advertising. (¶ 24). In order to launch this reactive television programming, ReacTV requires precise audience measurement on an ad-by-ad basis, the kind of data currently not available from Defendant. (¶¶ 24, 31).

Plaintiffs allege that Defendant has attempted to maintain its monopoly through acquiring its competitors, securing multi-year staggered contracts with ABC, CBS, NBC, and FOX Broadcasting, imposing steep financial penalties on customers who refuse to enter into long term agreements, and engaging in predatory pricing. (¶¶ 27, 28). As a result, erinMedia alleges that it has been blocked from its attempts to compete in the relevant market, and ReacTV has been unable to purchase the information it needs to launch its reactive programing. (¶¶ 30–31).

Plaintiffs filed suit asserting a violation of Section 2 of the Sherman Act, Monopolization, and a violation of Section 542.19 of the Florida Antitrust Act. Defendant moves to dismiss Plaintiffs' complaint on two grounds: (1) Plaintiffs have failed to sufficiently state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and (2) Plaintiffs lack standing to assert both a federal and a state antitrust complaint. (Doc. No. 14).

## II. Standard for a Motion to Dismiss

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. *See Murphy v. Federal Deposit Ins. Corp.*, 208 F.3d 959, 962 (11th Cir.2000)(citing *Kirby v. Siegelman*, 195 F.3d 1285, 1289 (11th Cir.1999)). A complaint should not be dismissed for failure

to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim." *Id.* at 47, 78 S.Ct. 99. All that is required is "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986).

■ "Notice pleading is all that is required for a valid antitrust complaint." *Lombard's v. Prince Manufacturing, Inc.*, 753 F.2d 974, 975 (11th Cir.1985). However, "[c]onclusory allegations that defendant violated the antitrust laws and plaintiff was injured thereby will not survive a motion to dismiss if not supported by facts constituting a legitimate claim for relief." *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corporation, S.A.*, 711 F.2d 989, 995 (11th Cir.1983). Plaintiffs must plead enough information "so that each element of the alleged antitrust violation can be properly identified." *Id.*

### III. Discussion

#### A. Defendant's Motion to Dismiss for Failure to State a Claim

■ Section 2 of the Sherman Act is directed against "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. To state a claim

for monopolization, Plaintiffs must establish the following two elements: " '(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historical accident.' " *Morris Communications Corporation v. PGA Tour Inc.*, 364 F.3d 1288, 1293–94 (11th Cir.2004)(quoting *United States v. Grinnell Corporation*, 384 U.S. 563, 570–71, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)).

■ "The first element, monopoly power, is the power to control prices in or to exclude competition from the relevant market." *Id.* at 1294. The second element, willful acquisition, "requires predatory or exclusionary acts or practices that have the effect of preventing or excluding competition within the relevant market." *Id.* The Supreme Court has stated that "the possession of monopoly power will not be found unlawful unless it is accompanied by an element of anticompetitive *conduct.*" *Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP.*, 540 U.S. 398, 407, 124 S.Ct. 872, 157 L.Ed.2d 823 (2004)(emphasis in original).

■ Defendant argues that Plaintiffs have merely alleged monopoly power and monopoly pricing without facts to support the allegations, and that this is insufficient to state a monopolization claim. (Doc. No. 15 at 6). Defendant argues that Plaintiffs have also failed to sufficiently allege that Defendant has engaged in predatory or exclusionary conduct. (Doc. No. 15 at 7).

Plaintiffs' complaint alleges that Defendant has a monopoly of the relevant market and has the power to control price and output. (Doc. No. 1 at 13). Plaintiffs claim that Defendant's monopoly power is a well known fact in the television industry, and they cite magazine articles and reports in support of this allegation. (Doc.

No. 1 at 13–14). The complaint also specifically alleges that Defendant has attempted to sustain its monopoly position by acquiring its competitors, securing multi-year staggered contracts with the four largest broadcast companies, ABC, CBS, NBC, and FOX Broadcasting, and imposing steep financial penalties on customers who refuse to enter into long term agreements. (Doc. No. 1 at 15–16).

Defendant argues that the allegation of Defendant's alleged acquisition of competitors is insufficient, for Plaintiffs have failed to allege a specific competitor whom Defendant has acquired. (Doc. No. 15 at 2). Defendant also argues that Plaintiffs' allegation that Defendant has maintained its monopoly by securing multi-year staggered contracts is insufficient to state a claim, because Plaintiffs' complaint fails to allege why the staggering prevents networks from signing with other ratings companies. (Doc. No. 15 at 8–9). At this point in the litigation, Plaintiffs are not required to specifically state which competitors Defendant has acquired, nor exactly how staggering the multi-year contracts has enabled Defendant to entrench its monopoly. All that Plaintiffs are required to allege is enough information "that each element of the alleged antitrust violation can be properly identified." *Quality Foods*, 711 F.2d at 995.

Therefore, the Court finds that, at a minimum, Plaintiffs' complaint contains enough facts that Defendant can properly identify the two elements required to state a claim for monopolization. Therefore, Plaintiffs' complaint has satisfied the requirements of Federal Rule of Civil Procedure 8(a) and has sufficiently put Defendant on notice as to Plaintiffs' antitrust cause of action. Accordingly, Defendant's motion to dismiss on the ground that Plaintiffs' complaint fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is denied.

**B. Defendant's Motion to Dismiss for Lack of Standing**

Defendant next argues that Plaintiffs do not have standing to bring an antitrust claim. (Doc. No. 15 at 10). Standing is a question of law for the Court to decide. *See Todorov, M.D. v. DCH Healthcare Authority*, 921 F.2d 1438, 1448 (11th Cir.1991). Antitrust standing for a private plaintiff "requires more than the 'injury in fact' and 'case or controversy' required by Article III of the Constitution." *Florida Seed Company, Inc. v. Monsanto Company*, 105 F.3d 1372, 1374 (11th Cir.1997). "[T]he doctrine of antitrust standing reflects prudential concerns and is designed to avoid burdening the courts with speculative or remote claims." *Id.*

The Eleventh Circuit has identified a two-pronged approach to determine whether a plaintiff has antitrust standing. First, a plaintiff must establish that it has suffered an "antitrust injury." Second, a plaintiff must establish that it is an "efficient enforcer" of the antitrust laws. *See Todorov*, 921 F.2d at 1449.

**1. erinMedia's Standing**

**a. Antitrust Injury**

To establish antitrust injury, a plaintiff must prove "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful .... It should be, in short, 'the type of loss that the claimed violations ... would be likely to cause.'" *Brunswick Corporation v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)(quoting *Zenith Radio Corporation v. Hazeltine Research*, 395 U.S. 100, 125, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969)).

Defendant argues that erinMedia has failed to allege that it was prepared to

**1268**

enter the market. (Doc. No. 15 at 11). When a plaintiff seeks to recover for an antitrust injury that arises from a frustrated attempt to enter a market, the plaintiff must demonstrate " '(1) an intention to enter the business, and (2) a showing of preparedness to enter the business.' " *Cable Holdings of Georgia, Inc. v. Home Video, Inc.*, 825 F.2d 1559, 1562 (11th Cir.1987)(quoting *Hayes v. Solomon*, 597 F.2d 958, 973 (5th Cir.1979)). The Eleventh Circuit has stated that "[a]s long as the plaintiff made a reasonable attempt to enter the market, our Circuit's case law recognizes that the plaintiff has standing to contest antitrust violations which create barriers to that market." *Thompson v. Metropolitan Multi–List, Inc.*, 934 F.2d 1566, 1572 (11th Cir.1991).

■ In the complaint, erinMedia specifically alleges that "[d]espite erinMedia's superior product, erinMedia has been stymied in its attempts to compete in the relevant market by [Defendant's] anticompetitive conduct." (Doc. No. 1 at 17). Furthermore, erinMedia alleges that "Cable MSOs have been reluctant to agree to provide their set-top box data and develop national contracts with erinMedia because erinMedia is effectively precluded from gaining contracts with broadcast networks to measure their program viewership over cable." (Doc. No. 1 at 17). Assuming these allegations are true, erinMedia has sufficiently alleged its intention to enter the business. Furthermore, if erinMedia currently has, as it alleges, a superior product ready to offer consumers of television audience research, erinMedia has sufficiently alleged its preparedness to enter into the business.

ErinMedia alleges that it competes in the market of providing production and sales of market research and television audience research. ErinMedia also alleges that it, and other actual and potential competitors of Defendant, have been unable to compete in the relevant market due to Defendant's anticompetitive conduct, which thereby impedes innovation and harms consumers. (Doc. No. 1 at 2–3). Assuming erinMedia can prove these allegations, erinMedia has alleged an injury of the type that the antitrust laws were intended to prevent and the type of injury that the alleged violation would be likely to cause. *See Brunswick*, 429 U.S. at 489, 97 S.Ct. 690. Therefore, the Court finds that erinMedia has sufficiently plead an antitrust injury.

b. Efficient Enforcer

■ Defendant next argues that erinMedia is not an efficient enforcer, because it could not compete in the relevant market. (Doc. No. 15 at 13). To establish that it is an efficient enforcer of antitrust laws, a plaintiff must meet the "target area test." *Florida Seed*, 105 F.3d at 1374. "The target area test requires that an antitrust plaintiff both 'prove that he is within that sector of the economy endangered by a breakdown of competitive conditions in a particular industry' and that he is 'the target against which anticompetitive activity is directed.' " *Id.* (quoting *National Independent Theatre Exhibitors Inc. v. Buena Vista Distribution Company*, 748 F.2d 602, 608 (11th Cir.1984)). An antitrust plaintiff cannot be an efficient enforcer if the alleged injury is too speculative or indirect. *See Thompson*, 934 F.2d at 1571.

■ Defendant argues that erinMedia only plans to collect data from "a fraction of the national market," therefore, it is unable to compete in the relevant market. (Doc. No. 15 at 13). The Court does not agree. ErinMedia alleges that it plans to collect data from television programming via cable, which comprises approximately 60% of the American television audience. (Doc. No. 1 at 14–15). This can hardly be

viewed as a fraction of the relevant market. Furthermore, the complaint alleges that erinMedia's process allows it to collect data from potentially millions of viewers, while Defendant uses data collected from approximately 8,000 households. (Doc. No. 1 at 12). Therefore, as pled, Defendant is the company collecting data from a fraction of the relevant market.

ErinMedia has pled that it is a competitor in the relevant market, and Defendant has effectively blocked its attempts to compete in that market. (Doc. No. 1 at 17). Furthermore, erinMedia alleges that Defendant has used its monopoly position to prevent it and other providers from selling their product in the market. (Doc. No. 1 at 18). If true, erinMedia is within the sector of the economy endangered by Defendant's actions and "is the target against which anticompetitive activity is directed." *Florida Seed*, 105 F.3d at 1374. Therefore, the Court finds that erinMedia is an efficient enforcer. Accordingly, Defendant's motion to dismiss erinMedia for lack of standing is denied.

### 2. ReacTV's Standing

#### a. Antitrust Injury

ReacTV argues that it is a potential customer of Defendant and its injuries are "inextricably intertwined" with Defendant's anticompetitive conduct. (Doc. No. 1 at 7; Doc. No. 24 at 14). ReactTV cites *Blue Shield of Virginia v. McCready*, 457 U.S. 465, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) in support.

In *McCready*, Carol McCready alleged that she was a consumer of psychotherapeutic services. *Id.* at 468, 102 S.Ct. 2540. In her antitrust complaint, she alleged "that a group health plan's practice of refusing to reimburse subscribers for psychotherapy performed by psychologists, while providing reimbursement for comparable treatment by psychiatrists" was an unlawful restraint on competition in the psychotherapy market. *Id.* at 467, 102 S.Ct. 2540. McCready alleged that she had been injured by the defendant's conspiracy to restrain competition in the psychotherapy market. The district court granted the defendant's motion to dismiss for lack of standing. The Fourth Circuit Court of Appeals reversed and held that McCready had alleged an antitrust injury.

In affirming the Fourth Circuit, the United States Supreme Court stated that:

> Denying reimbursement to subscribers for the cost of treatment was the very means by which it is alleged that Blue Shield sought to achieve its illegal ends. The harm to McCready and her class was clearly foreseeable; indeed, it was a necessary step in effecting the ends of the alleged illegal conspiracy.

*Id.* at 479, 102 S.Ct. 2540. In the case before this Court, the harm to ReacTV was not clearly foreseeable. ReacTV alleges that it "is a television production company dedicated to the production and development of reactive television programming, including the development of an interactive gaming network that, when launched, will allow television viewers to compete for prizes by watching and reacting, through personal responses, to television programming and advertising." (Doc. No. 1 at 13). ReacTV alleges that in order to launch its programming, it requires precise audience measurement on an ad-by-ad basis, and Defendant does not sell this type of data. (Doc. No. 1 at 17–18). Therefore, ReacTV alleges that it has been unable to develop its interactive gaming network. (Doc. No. 1 at 18).

Unlike the plaintiff in *McCready*, keeping production companies such as ReacTV from launching reactive programming is not a "necessary step" in achieving Defendant's alleged monopoly. At best, ReacTV's inability to launch its reactive

programming is an unintended consequence of Defendant's alleged anticompetitive conduct and not "the type of loss that the claimed violations ... would be likely to cause." *Brunswick*, 429 U.S. at 489, 97 S.Ct. 690. Therefore, the Court finds that ReacTV has not sufficiently plead that it suffered an antitrust injury, and as such, it lacks standing to sue.

### b. Efficient Enforcer

 The Court also finds that ReacTV is not an efficient enforcer, because it fails to meet the target area test. ReacTV has not sufficiently plead that it is within the sector of the economy endangered by a breakdown of competitive conditions. ReacTV is not in the business of providing television audience research data. However, assuming ReacTV was within that sector of the affected economy, ReacTV has failed to sufficiently allege that it is the target against which Defendant's anticompetitive activity is directed. *See Florida Seed*, 105 F.3d at 1374.

ReacTV alleges that it has not been able to launch its reactive television programming, because Defendant does not offer the type of information it needs. (Doc. No. 1 at 17). The basis of ReacTV's injury centers on the notion that if Defendant did not have a monopoly in the television ratings area, erinMedia would then be able to enter the relevant market and provide more accurate television audience research data. ReacTV could then use this data and try and launch its reactive television programing. As pled, ReacTV's alleged injury is too speculative and indirect to be a proper antitrust plaintiff. *See Thompson*, 934 F.2d at 1571. Accordingly, Defendant's motion to dismiss on the ground that ReacTV lacks antitrust standing is granted.

### IV.  Conclusion

Accordingly, is it **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Complaint (Doc. No. 14) is **GRANTED IN PART; DENIED IN PART**:

1. Defendant's motion to dismiss Plaintiffs' complaint for failure to state a claim (Doc. No. 14–1) is **DENIED**;

2. Defendant's motion to dismiss erinMedia for lack of standing (Doc. No. 14–2) is **DENIED**;

3. Defendant's motion to dismiss ReacTV for lack of standing (Doc. No. 14–3) is **GRANTED**.